Good morning, Your Honors. My name is Jill Telfer, and I represent the appellant plaintiff in this matter, Charles Timmons. And Mr. Timmons is also here in the court today with his wife. I would request, if I may, to reserve five minutes for rebuttal. You should try to keep your own time, and I'll try to help you. Thank you, Your Honor. Charles Timmons presented substantial evidence that he was able to perform the essential job functions of a UPS truck driver with the reasonable accommodation of assistive equipment to defeat defendant-respondent UPS's motion for summary judgment and to create triable issues of material fact. The assistive equipment he requested was power steering, manual transmission I'm sorry, automatic transmission, and a lumbar support seat. What about the function of delivering the packages and lifting them? Wasn't he required to carry more weight in packages and raise his arms in a manner that the doctor said he couldn't do? Specifically, Your Honor, he did perform the essential job functions with the assistive equipment. He did it for two and a half years. What occurred, there's a triable issue of material fact as to what are the essential job functions. And specifically, what the defendants presented, in which Judge England relied on, was the position description that identified what UPS claimed were the essential job functions. However, if you read at the very bottom of that description, it says that these essential job functions are flexible, can change with discretion, and pretty much they're not set in stone. The case of Norris v. Cisco, which plaintiff appellant provided in their or her brief, or I guess his brief, specifically identifies that it's a triable issue if you presented evidence that the work experience of past employees or the current employee is able to perform the job. Look at what that person did in the job. Specifically, Mr. Timmons did the job for two and a half years, and it's undisputed. This case really boils down, if you really look at it, it's quite simplistic, and that is that Charles Timmons was a truck driver for UPS, and he did the job with the reasonable accommodation of assistive equipment. What do you do with the fact that UPS offered him accommodation in this other route with the automatic shift truck, and he turned it down? Specifically, nine months after Mr. Timmons requested reasonable accommodation and was precluded from earning an income, Mr. Timmons was told that he could bid for this route and that UPS would make sure that he got it. But specifically, Mr. Timmons in his declaration identified that that route had numerous stops, which would exacerbate his condition, and it was the Nordic route. He can't make numerous stops? Yes, Your Honor. In regards to making numerous stops on a rural route. Is that a part of the disability that's in the record about the number of stops he could make or something? That's not specifically in the record, Your Honor. But there's a triable issue in that regard. Mr. Timmons specifically identified in his deposition and his declaration that in regards to, after nine months after requesting accommodation, that this Nordic route was a route with numerous stops that would exacerbate his pain. And that was the real issue, which Dr. Crone identified, is his pain level, what he was able to do with his pain level. And that's why she identified the restrictions she did. But specifically, if you look at those restrictions, and I think it's very important to do so, they're found in the record at excerpt records 691 to 696. And specifically, Dr. Crone identified that Mr. Timmons just cannot drive a manual transmission truck and needs back support while driving. Does it say anything about how many stops he can make? Specifically, that issue was never raised with Dr. Crone. And that issue was not raised. There's nothing in the record that supports that reason for turning down the route as a reasonable accommodation, is there? Yes, specifically the declaration and deposition testimony of the plaintiff himself. Which says what? Which specifically identified. I turned down the route because there were too many stops? Yes. I mean, I didn't bid on it because there were too many stops? He actually gave two reasons. The first reason was, and the courts have found that he felt it was a disingenuous offer. After nine months of trying to get back to work and asking for the specific assistive equipment, he was told after he planned the surgeries, because he was precluded from income, after those nine months, then he was told that he could bid on a route. He was not told he would be given a route. And there are cases on point that specifically state that telling an individual they can bid on the route is not sufficient. I gather that was required by the union contract. Specifically in regards to routes. Management can't just, you know, say, I'm going to give you this route, without complying with the procedures of the collective bargaining agreement, right? That's true, but. Well, then why are you making this business about they didn't give him a route? Because it's very important, Your Honors, and that is because even though UPS has a contract that they would have to bid on a route, specifically UPS had the discretion to change routes, meaning that change the number of stops, change them around. They did not do that here. The issue is, why not the assistive equipment for nine months? Why? There's no evidence of hardship. The defendants claim it was a business reason, and that's why they would not put the truck that accommodated Mr. Timmons for two and a half years on his route. It's a tribal issue, because why not put it on his route? Tribal? You never challenged that, you know, factually, that there was a business reason for changing it, which was, I guess, the increase in volume, right? Oh, it was challenged, Your Honor. There is evidence. Just factually in what way? From Mr. Timmons himself. He's the person most knowledgeable about that route. He was on that route for two and a half years. He was gone all this period, and they say during this period the volume increased, so we had to get a bigger truck, and that's not controverted. Specifically, Your Honor, what the UPS argued was that they had to shuttle packages while Mr. Timmons was on the route, and during his three-month medical leave they continued to do it. That's what the evidence is, which was disputed by plaintiff, because he's the person most knowledgeable, and he said the shuttling never occurred except at Christmastime, and it occurred on all the routes, not just his. So, again, it's a tribal issue of material fact. What occurred is UPS has played fast and loose with the facts of this case to impassion the trial court so that it would grant the MSJ, and it's done so in this court in its opposing brief, where it argues that Charles Timmons obtained lucrative disability and workers' compensation benefits and thereafter sued UPS for discrimination, essentially claiming that Mr. Timmons works the system. There's no evidence to support that. Mr. Timmons was an excellent and exemplary employee who merely wanted to work. Was he interested in any other kind of accommodation besides what you already mentioned, you know, a truck with these accommodations in it, in other words, like some other position that didn't involve driving or something like that? No, definitely. He wanted to work. He had a family of four, and he wanted to work. Well, that brings me to an issue, because you want to know when there's five minutes left. What about the interactive process? Do you think there's a tribal issue of fact on that? The company says that you rejected, Mr. Timmons rejected the efforts to have an interactive process, and Mr. Timmons alleges it's the company that did it. Based on the affidavits, is there a genuine dispute as to that issue? Definitely, Your Honor. The evidence which is undisputed is that Mr. Timmons began the interactive process in October of 2004, and he requested himself and through the UPS's doctor that he receive the assistive equipment that he utilized the two-and-a-half years before. He continued to make that request. He made approximately eight requests for reasonable accommodation. Finally, in March of 2005, he submitted it in writing. And for the first time about a month later, in April of 2005, the defendant said, well, give us some medical information. It already had the medical information, but it did make that statement, please give us medical information. Mr. Timmons did. UPS did nothing until the end of July of 2005. Now, there's a dispute as to what actually happened. The UPS representative, Mr. Dugan, impeaches himself. In his deposition, he claims that he called Mr. Timmons and he felt Mr. Timmons was supposed to call him back. But if you look at the documentary evidence that Mr. Dugan drafted, UPS has this packet that it's supposed to fill out when it's engaged in the interactive process. And in it, in his own handwriting, he states that he called Mr. Timmons and that he would be following up with Mr. Timmons when he visited the Chico area. As a result, that is the only interactive process that took place. Mr. Timmons repeatedly coming from October, November, December, January, February, March, continuing for nine months without earning an income from his job. And UPS did not reciprocate. So clearly there exists a tribal issue of material fact as to that claim. Also in regards to – I'm going to take one more minute and not use it on the rebuttal. But there is a tribal issue of material fact as to being a qualified – You've gotten about 15 minutes into your 10 minutes' worth of talking. Okay. Darn it. I'll give one minute then and say – You've got four minutes left. Okay. Specifically, there is a tribal issue of material fact in regard to Mr. Timmons being a qualified injured person with a disability. And the tribal issue is he did the job for two and a half years with the same limitations. He did it. I mean, what more evidence do you need than that? The defendants come up with this evidence of what they call is their job description. It's disputed in regards to whether or not the essential job functions. But clearly, Mr. Timmons did the job. Defendants have no evidence to refute that Mr. Timmons could have done the job with the reasonable accommodation of the assistive equipment. There's no evidence that they have at all. And as a result, this is an issue that should be tried by the jury. I don't know if judicial estoppel is an issue that the court – Well, you've got three minutes left now. Okay. I'm going to talk about judicial estoppel because that's very important to me. You're going to have no time for rebuttal by the time you get to it. Okay. Then I'll take the direction and wait. And I'll use it on rebuttal. Thank you, Governor. Smart move. Go ahead. Good morning, Your Honor. Paul Kane for United Parcel Service. The district court correctly applied two legal principles to grant summary judgment here. The first is that of the prima facie case. The plaintiff has to show that he can perform the essential functions of the job with or without a reasonable accommodation. And as I'll describe, Mr. Timmons could not do that. And the second principle, equally dispositive, is that of judicial estoppel, which precludes a party from playing fast and loose, taking advantage of taking a position in one form and then reversing course in another. Here, the reversal is that Mr. Timmons now contends he could lift, he could deliver the packages, he could raise his arms over his head, but his doctor earlier specifically said he could not, and he obtained lucrative disability benefits as a result. When did you learn of the doctor's limitation of ten pounds? Those doctor's limitations were effective as of November 18, 2004, and they were filed in a series of disability filings over a course of time thereafter. But there's no dispute that his doctor took the position that as of November 18, which is when his leave of absence commenced, those medical restrictions were binding on Mr. Timmons and precluded him from performing. After the first time you received the limitations, did he drive a truck at all after that? After the doctor's limitations were stated, no, he did not. By the way, it may not be an issue in this case, but just out of curiosity, because you don't contest it, but what is the plaintiff's disability? We don't dispute that he had a disability. I think that the ability to lift is probably a major life activity, or at least lift a certain amount of weight. We're not contending here that he did not have a disability covered by at least the state law, if not the federal law. Three sets of facts are dispositive of both the issues of Prenofosha case and judicial estoppel in our view. First, there isn't any dispute about what the essential functions of the job were. Counsel says that there is a dispute, but there isn't. We quoted Mr. Timmons' deposition testimony, which says that in his job he had to lift up to 70 pounds and he had to reach over his head. UPS's job description says that, and sworn testimony in the record from UPS's managers also say that. That's at excerpts of the record. What about the fact he'd been doing the job just fine for a year and a half? And his contention is because he used to be able to do the job, he could in the future do the job. And that's a non sequitur. Where you have a deteriorating condition, what used to be true isn't necessarily true anymore. If he can't do the job, then this gets to the series of questions I think Judge Reinhardt asked your opponent. Did you, as a part of your interactive process, look into whether there were other jobs he could do? He never asked for another job. Did he have to ask? Is it his burden to ask? Well, I want to be a file clerk. Does he have to be specific in his duty? As part of the interactive process, you have to say what kind of accommodation you want. And what he said was. . . Before, shouldn't there be a process going before you say what kind of a job you want? That may also depend on what kind of jobs there are available. Opposing counsel said that what happened in the process was that your, whoever it is, human relations officer, whoever it is that goes around, spoke to Mr. Timmons, said he was coming to town, and that they would pursue the interactive process, and that Mr. Timmons never heard from him again. No. That severely distorts and misrepresents the record. It's at page 723 of the excerpts of record. Okay. One minute. What the note said is that the UPS person would follow up at the Chico Center to ensure that the kind of vehicle that UPS was offering would, in fact, be available. And he committed that it would be, and he said he would follow up to ensure that it was. He did not, there was no statement that he would follow up with Mr. Timmons because Mr. Timmons wasn't in the Chico Center at that time. Well, you know, what I'm interested in is did anybody look at any other job besides being a truck driver? And if not, I mean, who's to be blamed for that? Well, the Chico Center consists of packages. It's not like an office building where there are, you know, jobs of various sorts. There are other people there who don't drive. I'm sure. I've never seen it, but, you know, there must be a dispatcher, for instance. I'm sorry? There must be a dispatcher there. He's never asked for such a job. He's never been. First you said, well, there's nothing but truck drivers. Well, my question is, is he supposed to know the UPS operations so he knows what to ask for? Or is that your function to tell him, well, look, tell us what your disability is and we'll tell you what jobs are available? I mean, how is this supposed to work, is my question, the interactive process? And what did you do to fulfill your part in that? The only thing he ever asked for was to get a particular kind of truck and to remain on the route that he most preferred. He disparaged the- He interviewed you and said that was all he asked for. All you had to do was to determine whether that was a reasonable request. Well, there's two parts to it. First is we respond to what he asks for. The second is that the employer is never obliged to provide the individual's most preferred reasonable accommodation. The employer's obligation is to provide a reasonable accommodation. Here it did a series of things. First, it put him on light-duty work pursuant to the union contract. When that period of time elapsed under the union contract, it put him on leave of absence, which also is a reasonable accommodation. And when he renewed a request to be given a different route, UPS offered him another route. And as you noted in your question to my opponent, Judge Tashime, he disparaged that route, and the union contract controlled who would get it. It's true he technically had to bid for it, but UPS went to him and said, Hey, we've got this route, and you have the seniority to get this route. You will get this route if you ask for it. And he disparaged that route. Not he, but Ms. Telford said, well, the reason he turned that down is because there are too many stops, and his, whatever his, I'll call it his need for pain management, you know, was not consistent with all that many stops, and that was one of his, you know, physical limitations, which you knew about. Now, what the record shows as to that route is he said he didn't want it. He called it a pig route. But there's no statement in any document that's in the record that indicates that he was unable to perform that route because of pain. You said we should look at, I think this is page 703. 723, according to my notes. Okay. What is your idea of the requirement of an interactive process that is a requirement? Is that correct? Yes. All right. And what is your obligation with regard to assuring that that takes place? The company's obligation is to listen and respond and to offer a reasonable accommodation. So your point is that an accommodation doesn't occur unless the employee calls and says, I want an interactive process. No. I don't think the employee has to chant any particular magic words, but if the employee has a disability, the employer knows of a disability, and the employee makes a request for something, the company, of course, responds to that. Well, unless the employee makes a request, there's no interactive process. Yes. I believe that to be the law, but I don't think this case turns on that. He did make a request. What he asked for was a particular kind of vehicle for his route. And I suggest that that's a sideshow, that it's a complete red herring issue, because the issue of whether that particular car was given or not would have helped him drive. But that had nothing to do with his ability to lift the packages and deliver them that are an essential part of the job. He made a request, so that should have been enough to start the interactive process going. And it did. The company responded by giving him a series of reasonable accommodations. Which is the one you listed, huh? Yes. You know, I guess my idea of what an interactive process would be is that the employer representative would sit down with the employee or his representative and say, look, this is what you need to accommodate you, this is what we got, so forth. Rather than this distant back and forth through e-mails or whatever, that doesn't seem to really accomplish what the interactive process was designed to do. I don't think the law prescribes a particular form that the interactive process has to take. But in further response to your question, I'd note the cases cited in our 28-J letter recently that says, any dispute about the interactive process becomes moot if, when you examine all the facts, no reasonable accommodation could have been offered that would have solved the problem. Reasonable accommodation includes not only driving the truck, it includes seeing if there are other jobs that Mr. Timmons could perform. And as far as I can tell, it's stopped with seeing whether he could drive the truck. Well, you don't have to promote an individual as a reasonable accommodation. Or you could demote him, maybe, for a job. The union contract-covered jobs are all determined by the rules under the union contract. And as many cases have established, you don't have to, as an accommodation, bypass the assignment rules for union contract-covered positions. And even the non-driving positions. Well, that might be a defense. I don't think any of this is discussed in summary judgment, that the union rules, there were no other jobs, there was nothing else we could do, because the union rules prevented us from giving him a job anywhere else. That may be your ultimate answer, but I don't think that was the answer in summary judgment. Nowhere on summary judgment, indeed, to the best of my knowledge, at no point in this case was any other job identified by the plaintiff as being potentially at issue. Well, I think that answers Ron's question, though. Whose obligation is to search for another job? I mean, the plaintiff has to look at every job in the company or every job that's available under union contract and try to find one that fits him, or is it like the job of the personnel department or UPS? Two answers to that. First of all, I think the company's obligation is to be responsive. And if the individual says, this is the accommodation I want, that's an answer. Just a minute now, though. I mean, you said you recognized, well, he had this limitation where he couldn't lift, right? So that disqualified him from being a truck driver. So in that context, isn't it your responsibility as part of the interactive process, then, you know, for the HR to say, well, are there any other jobs that, you know, he's qualified for with accommodation that doesn't involve, you know, 70 pounds of lifting? In other words, doesn't the company have to respond in that manner? Instead of saying, well, you can't drive a truck, so, you know, we're not going to give you a job. If there had been any expression of interest in some other job, that's what would have occurred. But there wasn't. That's why you keep saying, well, he has to make a request. You have to show an interest. You know, he has to say, I want this job. But why is that his obligation when you know what all the jobs are? Then my second response is, the company's obligation is to provide a reasonable accommodation. And it did that. And once a reasonable accommodation is provided, the fact that now on appeal, after the fact they say, oh, maybe I would have liked a different job, becomes moot because a reasonable accommodation was provided. But you're saying at least when you were in district court, he never asked for or no question ever came up about whether or not he was eligible for any other job besides a truck driver. That's correct. The only accommodation he ever identified was power steering and automatic transmission, which I suggest is not. And no one ever suggested, you know, the plaintiff or the judge or anybody that, well, maybe UPS has an obligation to look for some other job besides a truck driver? The issue of other jobs was never raised at any point by the plaintiff. Now, can you cite me some authority that says it's the plaintiff's obligation to, you know, list the jobs he's interested in? No. I don't think it's the plaintiff's job to submit a list of jobs. But it's the company's obligation to be responsive to what the plaintiff is asking about. And the plaintiff was asking for power steering and automatic transmission. The plaintiff was not asking for some different job. He wasn't asking for any other accommodation except, you know, except for a certain configuration of the truck. Yes. That's all he asked for. Yes. And so since that's all he asked for in your view, your only obligation was to respond to that request. That's your view. Your obligation under the ADA. I think the obligation to interact is to be responsive in the universe of what the plaintiff says he or she is interested in or the individual says he or she is interested in. I just want to understand your position. Okay. That's fine with me. Thank you. Okay. I think we've reached the end of the time. Thank you, Your Honor. Thank you, counsel. Succinctly, Your Honor, I'll address the issues that you've just raised. First, in Barnett v. U.S. Airways, the interactive process is required to be timely and in good faith and have a fluid exchange of information. Mr. Timmons met his obligation. What is in the record on this issue from your side as to what occurred with respect to the interactive process? What occurred or didn't occur? Where do we find that in the record? Specifically, Your Honor, I identify in the record that through Mr. Timmons' declaration, everything that he did starting from in October of 2004. Did he ask for any accommodation except for a certain type of truck? No, and the reason why is no one ever informed Mr. Timmons there was a reasonable accommodation policy until in March he finally got information, some papers, but no one explained the policy that he had a right to an alternative position. So that's the obligation of the company? Yes, based on Jensen v. Wells Fargo Bank. Now, is that under state law or federal law? That's under state law. I'm sorry I don't have a federal site on my fingertips. That's all right. I just want to know where to look for it. That's all. But Jensen does state that it's because the employer has the information of what available positions are there. It's the employer's obligation to identify all of the different available accommodations, not for plaintiff, and as a result, plaintiff was unaware that he had a right to an alternative position. He surely would have taken it. Then finally, in regards to the judicial estoppel, I need to address it. The court, Judge England, found that because Mr. Timmons asked for disability, that he per se was precluded from receiving or he was judicially estopped from pursuing his VHA and ADA claims, and that violates this circuit's ruling in Johnson v. State of Oregon. He also abused his discretion in that it's important Mr. Timmons did not ask for disability until after UPS denied him reasonable accommodation. And in those requests for disability, he specifically and his doctor identified that if he was provided, he needed power, steering, and automatic transmission. And he specifically identifies putting the employer on notice. And as a result, UPS's failure for over nine months was not timely, so it violated the interactive process. And it was never in good faith, because they never told him what was available to him. They never gave him any information. Instead, they just said, oh, we're going to meet with you. Oh, and finally, in regards to the ‑‑ I'm sorry. I know I need to cite this to you. You requested information in regards to where in the record Mr. Timmons requested or actually Mr. Dugan talked about the interactive process and what he did. At 4.50, it's specifically Mr. Dugan in his own handwriting states that he called Mr. Timmons. It was in August of 2005, so ten months after the interactive process started. And he said that he would be in Chico next week and he would follow up more. And he told this to Mr. Timmons. So as a result, the breakdown in the interactive process was by UPS. Well, you're talking about accommodations as to driving the truck, right? Correct, because Mr. Timmons was never told any other available accommodations. The only accommodation he knew of was the automatic transmission and the power steering. I still don't quite understand how that solves the problem of the doctor saying he couldn't lift packages. The doctor identified in her deposition that she believed that with accommodation he could do the job. What does do the job mean? About lifting the packages of more than ten pounds and lifting them above his shoulder? Did she say he could do that with some mechanical device? That's what she said in her deposition. She talked about lifting devices. She said that there's all sorts of devices with people that have limitations. Mr. Timmons in his deposition said he just self-modified, and what he did was he went into work early and rearranged the packages before he went out so that he wouldn't have to be lifting overhead. And that's how he was able to do it for two and a half years. There's no evidence in the record that Mr. Timmons had a deteriorating condition, and the defendants failed to provide any evidence as such. With the interactive process, would that have considered that question of whether he could continue to do his job if he had the right kind of truck? Yes. See, that was a problem. If he had engaged in that interactive process, we could have looked at the various options, maybe if assistive devices could have been provided so that he could lift, whether or not there are alternative positions. But because defendants failed to meaningfully and timely engage in that process, we weren't able to examine all the other types of reasonable accommodations that were available because he didn't know. But clearly, UPS is an extremely large company. They have a multitude of positions, and Mr. Timmons was not given the consideration. But had the interactive process been in good faith and timely, we definitely probably wouldn't be here. Thank you very much, Your Honors. Thank you both very much. The case is arguably submitted.
judges: Hug, Reinhardt, Tashima